ERNST et al. v. LOEB et al.

(Supreme Court, Appellate Term.   February 7, 1908.)

1. BROKERS—ACTIONS FOR COMMISSIONS—EVIDENCE.

Brokers, suing for commissions on an agreement of exchange not consummated, must show by clear and convincing evidence that they brought the parties to an explicit and valid agreement of exchange, and that it was the fault of the party sued that such exchange was not consummated.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, §§ 116–120.]

2. SAME.

> Evidence in an action by brokers for commissions on an agreement of exchange *held* not to support a verdict for the brokers.
>
> Seabury, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by Sigmund Ernst and another, copartners, against Antoinette Loeb and another. From a judgment for plaintiffs, and an order denying a new trial, the above-named defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and SEABURY and GERARD, JJ.

I. T. Flatto, for appellant.

Parker & Ernst, for respondents.

GILDERSLEEVE, P. J. The claim of the plaintiffs in this action is that they earned the sum of $400 as brokers' commission in procuring an agreement for an exchange of properties between one Wattenberg and Mrs. Loeb, the wife of the defendant Jacob Loeb, in December, 1906. Substantially the only testimony in any way tending to show that such an agreement was made was that of one Cahn, one of the plaintiffs. Mrs. Loeb was the owner of Nos. 4058–4060 Third avenue, in the borough of the Bronx, in this city. Her husband had authorized the plaintiffs to offer the premises for sale at $42,500. It appears that Wattenberg met Loeb at the office of the plaintiffs, and Cahn testifies:

"They got to talking about figures, and they were wrangling over $500 between them, and they finally agreed on terms and figures, and Mr. Loeb said: 'I will go down and take a look at your house on Pleasant avenue.'"

Cahn then says that he and Loeb went and examined the house, and then went to Loeb's store, where Mrs. Loeb was; that Mrs. Loeb expressed a desire to see the house; that she went out, and upon her return said she had been through the house, and said to her husband, "If you are satisfied go ahead and make the deal;" that they had lunch; that after lunch Loeb opened his safe and looked at certain papers, and asked Cahn what papers were necessary; that "I said all that was necessary was the deed and title policy"; that thereupon Loeb said, "We will go and make the contract," and then the question of what attorney was to represent the defendant was discussed; that he and Loeb then visited the office of one Flatto, and it was then arranged to meet at the office of the plaintiffs' attorneys at 4 p. m. that day; that Mr. Flatto subsequently telephoned that he and Mr. Loeb would not be able to meet the parties that day, but promised to meet Wattenberg the following day. Thereafter, and on the same day, Cahn met Flatto at the store of the defendant, and, after Cahn had expressed his sorrow that the transaction could not have been closed that day, Mr. Flatto asked, "Can't you get my client a little more cash?" to which Cahn replied, "I can't change these conditions, which have already been agreed upon between both parties." Cahn says that he then submitted to Loeb "the binder," which Wattenberg had previously signed that evening, "for his signature," and Mr. Flatto said:

"It is not necessary, as we will see you at half-past 11, at the appointed time, to draw the contract."

No meeting to sign a contract was ever had, and no written contract was ever entered into. The plaintiffs claim that Wattenberg was at the place and time appointed, ready and able to carry out his agreement to exchange his property for that of Mrs. Loeb upon the terms agreed upon, and that Mrs. Loeb failed and refused to perform on her part. Opposed to this testimony is that of Mr. and Mrs. Loeb and Flatto. Mr. Loeb denies positively that he and Wattenberg reached any agreement as to the exchange of properties at Cahn's office, and it is conceded that that was the only time he ever met Wattenberg. He says that he met Wattenberg at Cahn's office, and was told that he (Wattenberg) was the owner of 344 Pleasant avenue and that he (Wattenberg) wanted to make terms for an exchange of property; that he (Loeb) told him that the property belonged to his wife, and that it was for her to make the bargain; that thereupon a statement was given him, which statement was offered and received in evidence, and recites that the house is "five-story. Ranges & B. 1st mg. 16,500 5% Bogert Estate, 2mg. 3,200 6% 1910, 3mg. 2,000 6% Feby 1908"; that afterwards he and Cahn went over the property, and that Cahn had previously told him that there were ranges in all the apartments; that he did not find any, and upon telling Cahn, "That is not as you stated," Cahn replied, "Well, in some apartments there are stoves, and in some there are none." Cahn admits that he did tell Loeb that there were ranges in every apartment in the house, and that there were no ranges there; and that this conversation took place, as detailed by Loeb, is not disputed by Cahn. Loeb further testifies: That after the examination of the house they returned to his store, and that Mrs. Loeb then went over and examined the house. That on her return she told Cahn: "I can't say anything. Mr. Flatto looks after our real estate matters. You better go down with Mr. Loeb, and see him about that property." That after dinner Cahn said: "Bring your deed of the property along, in case we agree, so that we can make a contract right away." That thereupon Cahn and Loeb went to Flatto's office, and after some inquiries relative to the mortgages, made by Flatto of Cahn, that Cahn was told that they would let him know later. That the same evening Cahn called at Loeb's store, Mr. Loeb, Mrs. Loeb, and Flatto being present, and that Cahn was then told that "it was not as you stated; it is not satisfactory; go and look for something else for us." Mr. and Mrs. Loeb were corroborated in this by Flatto, who further testified that up to the time of that meeting no definite figures had been fixed as a basis for the exchange of properties; that subsequently he ascertained that the mortgage of $2,000 provided for payment on August 1, 1907, instead of February 1, 1908, as given in the statement furnished by Cahn to Loeb. Wattenberg was called as a witness for plaintiff, and, although he testifies generally that he and Loeb agreed upon terms of exchange, he adds: "Mr. Loeb said: 'I want to go and see the Pleasant avenue property, and if it is as good as you say I will let you know.'" That Loeb went away with Cahn, and that, when Cahn returned, "Cahn told me Mr. Loeb likes the house, and that we should make a binder, and

I said, 'All right; if they like it, we will do it,' and I gave him a check for $100 as a binder, and I signed a paper there." This testimony, in effect, corroborates the testimony of Mr. Loeb, and shows that the minds of the parties had not met at that time, and the subsequent alleged promise of the defendants to consummate the transaction rests upon the unsupported and uncorroborated testimony of Cahn alone.

Wattenberg further testified that he did not own the Pleasant avenue property, but claimed that he had a contract for its purchase, buying it subject, as he said, to two mortgages, and that a third one was to be assigned to him, and that he could extend the time of payment of this third mortgage. This evidence was evidently given to do away with the record evidence, showing that the third mortgage was due August 1, 1907, instead of February 1, 1908, as contained in the statement given to Loeb by Cahn. This contract, claimed to have been held for the purchase of the Pleasant avenue property by Wattenberg, was not produced. Its date was not shown, nor were any of its terms or conditions given, and it was claimed to have been lost or destroyed. A deed was introduced in evidence which showed that the Pleasant avenue property had been conveyed to one Solomon Weitz and Benjamin Weissman August 1, 1906. Wattenberg claimed that he had a contract, made by Weissman, for the purchase of this property, and Weissman testified that he gave such a contract to Wattenberg, having been orally authorized so to do by Weitz. Weitz was sworn as a witness, and positively contradicted this statement, and said that he never entered into a contract for the sale of the property, and never authorized any person to make such a contract, and that he owned it with Weissman on August 1, 1906, and had so owned it up to the time of the trial in April, 1907. The price of the Third avenue property was stated to be agreed upon between Wattenberg and Loeb at $40,300, and the price of the Pleasant avenue property at $26,500; but it does not appear how the difference in value was to be adjusted, and the details of the alleged agreement between the parties are left to uncertainty and conjecture.

It is clear that, from the plaintiffs' own showing, when Loeb left Wattenberg for the purpose of making an examination of the property, no complete agreement relative to the exchange had been made, but that such exchange was dependent upon the result of such examination. That such examination was satisfactory, and the agreement subsequently made, rests, as does the whole of plaintiffs' case as before stated, upon the unsupported and uncorroborated testimony of Cahn, who is flatly and positively contradicted by the testimony of Mr. and Mrs. Loeb and Flatto, and by the probabilities and all the reasonable inferences that can be drawn from the entire testimony. No exchange of property did take place, and before the defendant should be compelled to pay commissions to the plaintiffs it was incumbent upon them to show by clear and convincing evidence that they had brought the parties to an explicit and valid agreement of exchange, and that it was the fault of the defendant that such exchange was not effected. At the close of the testimony the complaint was dismissed as to the defendant Jacob Loeb. It is evident, from a careful examination of

the evidence, that the jury failed to give due weight thereto, and that the interests of justice require a new trial. The motion for a new trial, made upon the rendition of the verdict, should have been granted.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

GERARD, J., concurs.

SEABURY, J. (dissenting). In my judgment the verdict of the jury, which the trial justice refused to set aside, should not be disturbed. The case presented simply an issue of fact, which was exclusively within the province of the jury to determine. Mr. Cahn, one of the plaintiffs, testified positively to his employment by the defendant, his successful efforts to secure some one willing to exchange his property for that of the defendant upon terms satisfactory to the defendant, and to the agreement on the part of the defendant to make the exchange. He was contradicted by the defendant, her husband, and their attorney. The issue of fact raised by this conflicting testimony was submitted to the jury in a charge that was fair and just to both parties. In common-law actions the verdict of the jury ought not to be treated as merely advisory, which may or may not be permitted to stand, dependent upon whether or not it coincides with the opinion of the trial justice or the justices of the appellate courts. The jury were the judges of the credibility of the witnesses. The evidence was such that the jury could logically and reasonably have come to the conclusion at which they arrived. Believing Cahn to be a credible witness, they could have come to no other conclusion. If the jury had returned a verdict which was logically impossible upon the evidence, a different situation would be presented.

. I think the judgment and order appealed from should be affirmed, with costs.